FILED
CLERK, U.S. DISTRICT COURT

APR 24 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ROSA URIARTE, | No. CV 07-3558-PLA |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

I.

PROCEEDINGS

Plaintiff filed this action on June 5, 2007, seeking review of the Commissioner's denial of her application for Supplemental Security Income. The parties filed Consents to proceed before the undersigned Magistrate Judge on June 8, 2007, and June 12, 2007. Pursuant to the Court's Order, the parties filed a Joint Stipulation on February 7, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on May 20, 1951. [Administrative Record ("AR") at 42, 61.] She obtained her G.E.D. (general educational development) certificate [AR at 58], and has past relevant work experience as a warehouse worker. [AR at 53, 406, 600-01.]

On April 28, 2003, plaintiff filed her application for Supplemental Security Income payments, alleging that she has been unable to work since April 30, 1999, due to a back injury, neck problems, and depression. [AR at 42-45, 52, 61, 85-86.] After her application was denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 32-36, 38.] A hearing was held on February 11, 2004, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 364-86.] A vocational expert also testified. [AR at 383-86.] On February 26, 2004, the ALJ determined that plaintiff was not disabled. [AR at 16-23.] When the Appeals Council denied plaintiff's request for review on January 7, 2005, the ALJ's decision became the final decision of the Commissioner. [AR at 4-7.]

Plaintiff then filed an action in this Court challenging the Commissioner's decision. On April 27, 2006, in Case No. CV 05-1655-PLA, this Court remanded the matter back to the Commissioner to properly evaluate the opinion of plaintiff's treating physician and the severity of plaintiff's mental impairment.[1] [AR at 421-32.] On July 7, 2006, the Appeals Council vacated the ALJ's decision of February 26, 2004, and remanded the case for further proceedings consistent with the order of this Court.[2] [AR at 435.] On December 15, 2006, a hearing was held, at which

---

[1] The ALJ was directed on remand to "determine if plaintiff's belatedly submitted medical evidence regarding the severity of her alleged mental impairment is material and if good cause exists warranting its consideration." [AR at 430.]

[2] On April 8, 2005, the state Disability Determination Service determined that plaintiff was disabled beginning on February 8, 2005, in connection with an application for supplemental security income filed on February 8, 2005. [AR at 435.] The Appeals Council affirmed the state Disability Determination Service's determination that plaintiff was disabled as of February 8, 2005. [Id.] Accordingly, the Appeals Council vacated the ALJ's decision dated February 26, 2004, only with respect to the issue of disability before February 8, 2005. [AR at 435.]

time plaintiff appeared with counsel, but did not testify.[3] [AR at 597-610.] However, a vocational expert testified. [AR at 601-09.] On December 27, 2006, the ALJ once again determined that plaintiff was not disabled. [AR at 401-08.] This action followed.

### III.
### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

/
/
/
/

---

[3] Plaintiff's counsel indicated that plaintiff did not have any additional testimony to offer in light of the fact that plaintiff had already testified at the February 11, 2004, hearing. [AR at 601.] In the December 27, 2006, decision, the ALJ noted that plaintiff's counsel "agreed that [plaintiff] did not need to testify at [the December 15, 2006,] hearing, and that her prior testimony would be readopted, because the issue on remand was limited to whether her residual functional capacity was at the light or sedentary level of exertion." [AR at 401.]

# IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and

final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since April 30, 1999, the alleged onset date." [AR at 403.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: back pain, status post L4-5/L5-S1 fusion (August 2000); and cervical spine degenerative disc disease." [AR at 403.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that from April 30, 1999, until February 8, 2005, plaintiff retained the residual functional capacity ("RFC")[4] to "lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; sit, stand and/or walk without limitation, except that she needed a sit/stand option; occasionally climb, balance, stoop, crouch and crawl; but she could not have worked at or above shoulder level; and she could not have performed repetitive head movement at the end ranges of motion." [Id.] At step four, the ALJ concluded that during the relevant time period plaintiff was unable to perform her past relevant work. [AR at 406.] At step five, the ALJ found, based on the vocational expert's testimony, that "there were a significant number of jobs in the national economy that the claimant could have performed." [AR at 407.] Accordingly, the ALJ determined that plaintiff was not disabled prior to February 8, 2005. [Id.]

V.

THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to: (1) properly evaluate plaintiff's mental impairment; (2) carry the Administration's burden at Step 5; and (3) properly evaluate plaintiff's pain testimony.

---

[4] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

5

Joint Stipulation ("Joint Stip.") at 3. As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

### A. MENTAL IMPAIRMENT

Plaintiff contends that the ALJ failed to properly consider the existence of a severe mental impairment. Joint Stip. at 11-14. Specifically, plaintiff contends that "[t]he ALJ is incorrect in stating that [plaintiff's] mental impairment prior to February 2005 did not last over 12 months and is not severe." Joint Stip. at 13. Defendant argues that "[t]he ALJ properly considered [p]laintiff's mental health records and properly determined that she did not have a severe mental impairment." Joint Stip. at 16. Defendant further argues that the ALJ's determination was supported by substantial evidence. Id.

A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520, 416.920. "The Supreme Court has recognized that including a severity inquiry at the second stage of the evaluation process permits the [Commissioner] to identify efficiently those claimants whose impairments are so slight that they are unlikely to be found disabled even if the individual's age, education, and experience are considered." Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994) (citing Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)). However, an overly stringent application of the severity requirement would violate the statute by denying benefits to claimants who meet the statutory definition of "disabled." Corrao, 20 F.3d at 949 (citing Bowen v. Yuckert, 482 U.S. at 156-58). Despite use of the term "severe," most circuits, including the Ninth Circuit, have held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. at 153-54); see Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997) ("A claimant's showing at level two that he or she has a severe impairment has been described as 'de minimis'"); see also Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989) (evaluation can stop at step two only when there is no more than minimal effect on ability to work). An impairment or combination of impairments should be found to be "non-severe" only when the evidence

1 establishes merely a slight abnormality that has no more than a minimal effect on an individual's
2 physical or mental ability to do basic work activities. See Corrao, 20 F.3d at 949 (citing Yuckert
3 v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (citing Social Security Ruling ("SSR")[5] 85-28)); see
4 also Smolen, 80 F.3d at 1290 (citations omitted); 20 C.F.R. §§ 404.1521(a), 416.921(a).

In the decision, the ALJ found that plaintiff "did not have a severe mental impairment that met the duration requirement." [AR at 403.] The ALJ noted that plaintiff was assessed with a Global Assessment of Functioning ("GAF") score of 60[6] in 2004, which generally indicates moderate mental functional limitations. [AR at 403.] However, the ALJ asserted that "[t]here is no indication [] that [plaintiff's mental functional] limitations lasted the requisite 12 continuous months in duration prior to February 8, 2005." [Id.] The ALJ further asserted that "treatment notes do not indicate significant mental impairment, and [plaintiff] denied hallucination and suicidal and homicidal ideations." [Id.] In addition, the ALJ asserted that plaintiff's statement that "she could talk and 'laugh' with friends and family" was not consistent with anything more than "mild mental functional limitations." [AR at 403.] The ALJ's assertions are without merit.

In determining that plaintiff had no severe mental impairment, the ALJ noted the GAF score of 60 assigned to plaintiff in September of 2004, but failed to mention the GAF score of 50[7] assigned to plaintiff over fifteen months earlier in May of 2003. [AR at 347, 361, 403.] See

---

[5] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[6] A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th Ed. 2000). A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV at 34.

[7] A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34.

Escardille v. Barnhart, 2003 WL 21499999, at *6 (E.D. Pa. June 24, 2003) (holding that treating physician's assignment of a GAF score of 50 was significant evidence that the ALJ had to address). While a GAF score may not have a "direct correlation" to the Social Security severity requirements (see Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. § 50746-01 (Aug. 21, 2000)), the ALJ does not proffer any authority indicating that a GAF assessment of 50 and its implications may be ignored without sufficient reason. The ALJ cannot point to only those portions of the treatment record that bolster her findings. See Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore competent evidence in the record in order to justify her conclusion); see also Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted); Olds v. Astrue, 2008 WL 339757, at *4 (D. Kan. Feb. 5, 2008) (a low GAF score does not alone determine disability, but it is a piece of evidence to be considered with the rest of the record) (citation omitted). In addition, aside from a passing reference to the GAF score of 60,[8] the ALJ failed to consider the GAF score of 60 assigned to plaintiff when viewed in combination with the other medical evidence in the record that was also consistent with more than mild mental functional limitations. Specifically, the treatment records document plaintiff's mental health issues, e.g., major depressive disorder, depressive disorder, not otherwise specified, and depressed mood, as well as the fact that plaintiff was prescribed medication to treat her depression. See discussion, infra, pp. 9-10. The regulations provide that a mental impairment should be found not severe only if it causes "mild" limitations. See 20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1); see also Orr v. Astrue, 2008 WL 344528, at *4 (D. Ariz. Feb. 7, 2008) ("Great care should be exercised in applying the not severe impairment concept.") (citing SSR 85-28); Thompson v. Barnhart, 2006 WL 709795, at *13 (E.D. Pa. March 15, 2006) ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is

---

[8] In the decision, it appears that the ALJ only rejected the GAF assessment of 60 assigned to plaintiff because the mental limitations implicated by that score did not last for the required twelve month period, not because she disagreed with those limitations. [AR at 403.]

required so that a reviewing court can determine whether the reasons for rejection were improper.") (citation omitted).

Moreover, the ALJ's conclusion that there is no indication in the record that plaintiff's mental functional limitations evidenced by the GAF score of 60 lasted for the required twelve month period prior to February 8, 2005, is inaccurate. The records indicate that plaintiff sought mental health treatment at Augustus F. Hawkins Mental Health Center from May 2003 through October 2004. [AR at 341-44, 347-49, 353-63, 506-08.] On May 21, 2003, plaintiff was diagnosed with depressive disorder, not otherwise specified ("NOS"),[9] noted as having a depressed mood, and assigned a GAF score of 50. [AR at 361.] On June 20, 2003, plaintiff was diagnosed with major depressive disorder, single episode, severe without psychotic features.[10] [AR at 359.] On August 22, 2003, and October 24, 2003, plaintiff was diagnosed with major depressive disorder, recurrent, severe without psychotic features,[11] and was noted as having a depressed mood and crying spells. [AR at 356, 358-59.] Although in progress notes dated December 19, 2003, and September 3,

---

[9] On March 11, 2004, plaintiff was again noted as suffering from depressive disorder, NOS. [AR at 343.] The diagnosis code for Depressive Disorder, NOS is 311. See DSM-IV, at 381. Plaintiff was assessed with code 311. [AR at 343, 361.] "The Depressive Disorder Not Otherwise Specified category includes disorders with depressive features that do not meet the criteria for Major Depressive Disorder . . . ." See DSM-IV, at 381.

[10] The essential diagnostic feature for "Major Depressive Disorder is a clinical course that is characterized by one or more Major Depressive Episodes . . . without a history of Manic, Mixed, or Hypomanic Episodes . . . ." See DSM-IV, at 369. The diagnosis code for Major Depressive Disorder, Single Episode is 296.2x. See id., at 375. Plaintiff was assessed with code 296.23. [AR at 359.] The severity specifier for the current Major Depressive Episode is reflected in the last (fifth) digit of the coding for the disorder. See DSM-IV, at 411-12. "Severity is judged to be mild, moderate, or severe based on the number of criteria symptoms, the severity of the symptoms, and the degree of functional disability and distress." See DSM-IV, at 412. The severity code ".x3" indicates a "severe" Major Depressive Episode. See id., at 412-13. Severe episodes are "characterized by the presence of most of the criteria symptoms and clear-cut, observable disability (e.g., inability to work or care for children)," and defined as having "[s]everal symptoms in excess of those required to make the diagnosis, **and** symptoms markedly interfere with occupational functioning or with usual social activities or relationships with others." See DSM-IV, at 412-13 (emphasis in original).

[11] The diagnosis code for Major Depressive Disorder, Recurrent is 296.3x. See DSM-IV, at 376. Plaintiff was assessed with code 296.33. [AR at 356, 358.] The severity code ".x3" indicates a "severe" Major Depressive Episode. See DSM-IV, at 412-13; see also supra, fn. 10.

2004, it was noted that plaintiff's depression had improved, plaintiff was still diagnosed with major depressive disorder, recurrent, and moderate in severity.[12] [AR at 347, 355.] Additionally, on September 3, 2004, plaintiff was assessed a GAF score of 60. [AR at 347.] The medical records also indicate that plaintiff was prescribed Remeron[13] to treat her depression, and was taking that particular medication for well over a year. [AR at 342-44, 349, 356, 358-59.] Given that plaintiff provided objective medical evidence that she suffered from depression, took prescription medication for her depression, and was assessed as having a GAF score of 50 in May 2003, as well as a GAF score of 60 in September 2004, the ALJ erred in concluding that plaintiff's mental impairment did not meet the duration requirement.[14]

Furthermore, the ALJ merely pointed to notations made in the treatment notes that supported her non-disability determination -- plaintiff's denial of hallucinations, and suicidal and homicidal ideations, as well as a single response by plaintiff to a question in the Daily Activities Questionnaire indicating that she talks and laughs during visits with her friends and family -- while ignoring other evidence that was unfavorable to her determination of non-disability. Despite the fact that plaintiff denied having hallucinations, and suicidal and homicidal ideations, plaintiff was treated for major depressive disorder from May 2003 through October 2004, and was prescribed medication for her depression. [AR at 341-44, 347-49, 353-63, 506-508.] The ALJ's isolation of one of plaintiff's responses regarding her daily activities to support the conclusion that plaintiff did not have a severe mental impairment during the relevant time period, without more, is insufficient.

---

[12] Plaintiff was assessed with code 296.32. [AR at 347, 355.] The severity code ".x2" indicates a "moderate" Major Depressive Episode. See DSM-IV, at 412-13. Moderate episodes are defined as having "[s]ymptoms or functional impairments between 'mild' and 'severe.'" See id., at 413; see also supra, fn. 10.

[13] Remeron (brand name), also known as Mirtazapine (generic name), is used in the treatment of depression to restore the balance of natural chemicals in the brain. http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name;" then enter the name of the drug; then select the appropriate hyperlink if there are multiple forms of the drug; then follow "Uses" tab).

[14] Unless a claimant's impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. This is called the duration requirement. See 20 C.F.R. §§ 404.1509, 416.909.

1  See Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick
2  and choose from a medical opinion, using only those parts that are favorable to a finding of
3  nondisability") (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)); see also Drouin,
4  966 F.2d at 1257 (the administrative record must be examined as a whole, considering adverse
5  as well as supporting evidence).

6      The ALJ's finding that plaintiff suffered from no more than "mild mental functional
7  limitations" is not supported by substantial evidence. At the very least, the treatment records, as
8  well as the GAF assessments assigned to plaintiff in May of 2003, and September of 2004,
9  suggest that plaintiff meets the duration requirement at step two of the sequential analysis.
10  Accordingly, remand is warranted on this issue.

12  **B.    PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY AND THE JOB CITED BY THE VOCATIONAL EXPERT**

14      At step five, the ALJ relied on the vocational expert's testimony from the December 15,
15  2006, hearing to find that plaintiff was able to perform the job of a cashier. [AR at 407.] Plaintiff
16  contends that according to the Dictionary of Occupational Titles ("DOT"), the cashier job listed by
17  the vocational expert, DOT No. 211.462-010, requires plaintiff to exceed the residual functional
18  capacity assessed by the ALJ. Joint Stip. at 4-5. Specifically, plaintiff asserts that since the ALJ
19  found that plaintiff was restricted to "light work[15] with occasional postural limitations with a
20  sit/stand option and no work at or above shoulder level," it was error for the ALJ to conclude that
21  plaintiff could have performed the cashier job during the relevant time period. Joint Stip. at 4-5.
22  Plaintiff further contends that when there is a conflict between the DOT and the vocational expert's
23  testimony, the ALJ must elicit a reasonable explanation to allow for a deviation from the DOT.
24  Joint Stip. at 4-5. Plaintiff alleges that "[t]he ALJ did not elicit any testimony in this regard and the

---

[15] Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

11

ALJ's determination at Step 5 is not supported by the evidence." Joint Stip. at 5. Defendant argues that "there is no 'conflict' between the [vocational expert's] testimony and the DOT." Joint Stip. at 8.

The ALJ found, inter alia, that, from April 30, 1999, until February 8, 2005, plaintiff had the residual functional capacity to "sit, stand and/or walk without limitation, except that she needed a sit/stand option," and "occasionally climb, balance, stoop, crouch and crawl; but she could not have worked at or above shoulder level." [AR at 403.] During the December 15, 2006, hearing, the ALJ posed the following hypothetical to the vocational expert:

> [A]ssuming for purposes of hypothetical person number one that you're dealing with an individual -- well, for periods of time closely approaching advanced age. Currently advanced age with the high school equivalency diploma and the same past work. Is restricted to light exertional work as defined in the Dictionary of Occupational Titles and the Social Security regulations. Further limited to only occasional climbing, balancing, stooping, crouching and crawling. No work at or above shoulder level. No repetitive head movements at the end of range of motion. That is flexion, extension and side to side at the end range of motion. And a sit/stand option. Precludes the past work. Is there any -- are there any skills that are transferable within that RFC?

[AR at 601-02.] The vocational expert testified that a hypothetical person with the limitations described by the ALJ would be able to perform the job of a cashier. [AR at 602.] Based on the vocational expert's testimony, the ALJ determined that plaintiff could perform a significant number of jobs in the national economy. [AR at 407.]

"[T]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles. In order for an ALJ to accept vocational expert testimony that contradicts the Dictionary of Occupational Titles, the record must contain 'persuasive evidence to support the deviation.'" See Pinto v. Massanari, 249 F.3d 840, 845-46 (9th Cir. 2001), citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) (holding that the job description found in the DOT raises a presumption as to how the job is performed; the presumption is rebuttable if the record contains persuasive evidence to support a deviation). When the ALJ's decision contradicts the DOT, the ALJ must offer an explanation regarding why he or she is rejecting the DOT's description. See Johnson, 60 F.3d at 1434 & 1435 n.7 ("In this case the ALJ's explanation is

satisfactory because the ALJ made findings of fact that support a deviation from the DOT."); see also Terry v. Sullivan, 903 F.2d 1273, 1278 (9th Cir. 1990). "Occupational evidence provided by a [vocational expert] or [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between [vocational expert] or [vocational specialist] evidence and the DOT, *the adjudicator must elicit a reasonable explanation for the conflict* before relying on the [vocational expert] or [vocational specialist] evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency." SSR 00-4p (emphasis added). The ALJ is not only required to ask the vocational expert whether there is a conflict, but must also elicit an explanation for any such conflict. See Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (stating that SSR 00-4p explicitly requires the ALJ to determine whether the vocational expert's testimony deviates from the DOT and whether there is a reasonable explanation for any deviation).

      Here, the ALJ found that plaintiff "could not have worked at or above shoulder level," yet the cashier job cited by the vocational expert and relied upon by the ALJ requires "[r]eaching: [f]requently," which, according to the DOT description, means that this particular activity "exists" from one-third to two-thirds of the time. See DOT No. 211.462.010 (cashier);[16] see also SSR 83-10 ("[f]requent means occurring from one-third to two-thirds of the time."). Although the ALJ noted in the decision that plaintiff's exertional limitations did not allow her to perform the full range of light work and the ALJ included plaintiff's limitations of "only occasional climbing, balancing, stooping, crouching and crawling" and "no work at or above shoulder level" in the hypothetical posed to the vocational expert, neither the ALJ nor the vocational expert acknowledged that the DOT occupational information for the cashier job cited by the vocational expert requires frequent reaching, which may require plaintiff to go beyond the residual functional capacity found by the

---

[16] There is nothing in the DOT job description that indicates that a person with plaintiff's limitations of no work at or above shoulder level could perform this particular job.

ALJ.[17] In fact, when the vocational expert was asked by plaintiff's counsel whether the "cashier position" is generally performed with "a sit/stand option and no reaching," the vocational expert answered in the affirmative. [AR at 603.] The vocational expert's response that the cashier job is generally performed with no reaching is inconsistent with the DOT occupational information, which indicates that the cashier job requires frequent reaching. The ALJ did not ask the vocational expert whether the job he cited was consistent with the occupational information provided by the DOT.[18] Moreover, the ALJ did not ask the vocational expert for an explanation, nor did the vocational expert offer any, as to how an individual who is unable to work at or above shoulder level could perform the work cited by the vocational expert, which involves reaching "frequently."[19] It may be that the job given by the vocational expert can actually be performed by plaintiff even with her limitations; however, the ALJ did not elicit any explanation from the vocational expert to

---

[17] In determining plaintiff's residual functional capacity, the ALJ found that plaintiff "could not have worked at or above shoulder level," thereby implying that plaintiff could have only worked below shoulder level. [AR at 403.] See infra, fn. 19.

[18] It is the ALJ's responsibility to ask about any possible conflicts between the vocational expert's testimony and the DOT. See SSR 00-4p ("When a [vocational expert] or [vocational specialist] provides evidence about the requirements of a job or occupation, the adjudicator has an *affirmative responsibility* to ask about any possible conflicts between the [vocational expert] or [vocational specialist] evidence and the information provided in the DOT.") (emphasis added). Plaintiff's attorney asked the vocational expert if his testimony was "consistent with the DOT," and the vocational expert responded, "Yes." [AR at 606.] Even assuming that plaintiff's attorney, by asking the vocational expert whether his testimony was consistent with the DOT, fulfilled the ALJ's "affirmative responsibility" to ask about any possible conflicts, the ALJ nonetheless failed to elicit a "reasonable explanation" from the vocational expert, and the vocational expert did not offer any explanation, for the apparent conflict. See Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997) (holding that remand was warranted because "[n]either the ALJ nor the vocational expert explained the reason for departing from the DOT").

[19] Defendant asserts that "[n]othing in the DOT description of the jobs in question indicates that 'reaching' is always 'at or above shoulder level'" and that plaintiff "has merely been limited to the occasional performance of a subset of reaching." Joint Stip. at 8. While the DOT description for a cashier does not mention the specific type of reaching that is required on a frequent basis, given the RFC found by the ALJ and the vocational expert's assertion that the cashier job is generally performed with **no** reaching, the ALJ should have elicited testimony from the vocational expert to explain the possible discrepancy between the vocational expert's testimony and the DOT occupational information. See Massachi, 486 F.3d at 1153 (ALJ must determine whether the expert's testimony deviates from the DOT and whether there is a reasonable explanation for any deviation).

support such a conclusion. Since the ALJ failed to inquire into any conflicts between the vocational expert's testimony and the DOT occupational information, a determination as to whether substantial evidence supports the ALJ's step five findings cannot be made.[20] See Massachi, 486 F.3d at 1152-53 (an ALJ is required to inquire into any conflicts between the vocational expert's testimony and the DOT classifications, and to obtain a "reasonable explanation" for the conflict). Accordingly, remand is warranted on this issue.[21]

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly consider the severity of plaintiff's mental impairment,[22] and the vocational expert's testimony under SSR 00-4p. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

---

[20] Given that remand is appropriate based on the ALJ's failure to comply with the requirements set forth in SSR 00-4p regarding the use of vocational expert evidence, the Court need not address plaintiff's further argument in the Joint Stipulation that the ALJ "has failed to carry the Administration's burden" at step five based on the claim that "the presence of a stool is an accommodation." Joint Stip. at 5-7.

[21] As the ALJ's hypothetical to the vocational expert did not contain any mental limitations, the ALJ should -- in addition to inquiring into any conflict between the vocational expert's testimony and the DOT classifications, and obtaining an explanation for any such conflict -- address all of plaintiff's limitations in the hypothetical to the vocational expert on remand. "A vocational expert's testimony in a disability benefits proceeding is valuable only to the extent that it is supported by medical evidence." Gallant, 753 F.2d at 1456 (citation and internal quotation marks omitted). If the hypothetical is incomplete, "it does not constitute competent evidence to support a finding that claimant could do the jobs set forth by the vocational expert." Nguyen v. Chater, 100 F.3d 1462, 1466 n.3 (9th Cir. 1996).

[22] As the ALJ's consideration on remand of plaintiff's mental impairment may impact the other issue raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion not to address that issue in this Order. Rather, plaintiff's pain testimony should be re-examined in light of the remand Order.

1  Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;
2  (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant
3  for further proceedings consistent with this Memorandum Opinion.

5  DATED: April 24, 2008

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE